IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>PAUL BUNN and SNYDER LOGGING AND LANDSCAPING, LLC,<br><br>　　　　　Defendants. | CV 20–107–M–DLC<br><br><br>ORDER |

　　Before the Court is the United States' Unopposed Motion to Enter Consent Decree. (Doc. 20.) The United States requests the Court enter a partial consent decree after reaching settlement with Defendant Snyder Logging and Landscaping, LLC. (*Id.* at 2.)

### BACKGROUND

　　The United States commenced this action under 33 U.S.C. § 1319(b) and (d) of the Clean Water Act alleging that Paul Bunn and Snyder Logging discharged pollutants into waters of the United States without authorization. (Doc. 1 at 2.) The Complaint alleged that Mr. Bunn hired Snyder Logging for earthmoving work related to several ponds he wanted to build on his property. (*Id.* at 3.) Snyder Logging is alleged to have discharged dredge or fill material from Mr. Bunn's

property into a wetland adjacent to the Yaak River. (*Id.* at 5–7.) The United States contends that these wetlands are "waters of the United States" within the meaning of the Clean Water Act. (*Id.* at 8.) Neither Mr. Bunn nor Snyder Logging obtained any permits to perform this work. (*Id.* at 6.)

## DISCUSSION

The United States moves the Court for entry of a partial consent decree. (Doc. 20.) Consistent with 28 C.F.R. § 50.7, the United States posted the partial consent decree for public comment from October 5, 2020 through November 4, 2020 and received no comments. Neither Mr. Bunn nor Snyder oppose its entry. (*Id.* at 2.)

A consent decree is "not a decision on the merits or the achievement of the optimal outcome for all parties, but is the product of negotiation and compromise." *United States v. State of Oregon*, 913 F.2d 576, 580 (9th Cir. 1990). Consent decrees "encourage[e] informal resolution of disputes, thereby lessening the risks and costs of litigation." *SEC v. Randolph*, 736 F.2d 525, 528 (9th Cir. 1984).

The decision to enter a proposed consent decree falls within the district court's discretion. *Oregon*, 913 F.2d at 580. A court evaluates the proposal to ensure its terms are "fundamentally fair, adequate and reasonable," *id.*, considering both procedural and substantive fairness, *United States v. Chevron U.S.A., Inc.*, 380 F. Supp. 2d 1104, 1111 (N.D. Cal. 2005). Additionally, the consent decree

"must conform to applicable laws" although it "need not impose all the obligations authorized by law." *Oregon*, 913 F.2d at 580.

A court's review of the terms should be informed by the public policy favoring settlement, giving deference "where the decree has been negotiated by the Department of Justice on behalf of an agency[.]" *Chevron*, 380 F. Supp. 2d at 1111 (citing *United States v. Comunidades Unidas Contra La Contaminacion*, 204 F.3d 275, 280 (1st Cir. 2000)). On the other hand, a court must independently evaluate the decree to avoid giving it "rubber stamp approval." *United States v. Montrose Chem. Corp. of Cal.,* 50 F.3d 741, 747 (9th Cir. 1995) (quoting *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 462 (2d Cir. 1974)). For the following reasons, the Court finds that the proposed consent decree is both procedurally and substantively fair and consistent with the purpose of the Clean Water Act.

## I.     Procedural Fairness

The first step is to determine whether the proposed consent decree is procedurally fair. Courts evaluating procedural fairness look to determine whether the negotiation process was "full of adversarial vigor." *United States v. Pac. Gas & Elec.*, 776 F. Supp. 2d 1007, 1025 (N.D. Cal. 2011) (quoting *United States v. Telluride Co.*, 849 F. Supp. 1400, 1402 (D. Colo. 1994)). A decree that is the product of "good faith, arms-length negotiations," is "presumptively valid[,]" *Oregon*, 913 F.2d at 581, so long as no collusion has taken place, *Pac. Gas &*

*Elec.*, 776 F. Supp. 2d at 1025 (citing *United States v. Colorado*, 937 F.2d 505, 509 (10th Cir. 1991)).

Here, the proposed consent decree is the result of months of adversarial negotiations between the United States and Snyder logging, both of whom were represented by counsel.  (Doc. 20 at 7.)  These negotiations provided both parties with the opportunity to evaluate the strengths and weaknesses of each other's cases.  And there is no evidence of collusion.  Therefore, the decree is procedurally fair.

## II.     Substantive Fairness

The second step requires the Court to assess whether the terms are substantively fair.  The question is not whether "the settlement is one which the court itself might have fashioned or considers ideal."  *Pac. Gas & Elec.*, 776 F. Supp. 2d at 1025 (citing *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 84 (1st Cir. 1990)).  Instead, the "court's approval is nothing more than an amalgam of delicate balancing, gross approximations and rough justice."  *Oregon*, 913 F.2d at 581 (internal quotations omitted).  "The court need only be satisfied that the decree represents a reasonable factual and legal determination."  *Id.* (internal quotation omitted).

The proposed consent decree requires Snyder Logging to pay a civil penalty of $10,000 to the United States but does not require it to perform any restoration

work on Mr. Bunn's property.  (Doc. 20 at 5.)  This penalty is fair and reasonable given that Snyder Logging is not the owner of the property but was hired to perform the earthmoving work.  The $10,000 penalty represents a significant portion of the proceeds Snyder Logging was paid for the work.  Although the United States initially sought a higher penalty, this payment is a reasonable settlement figure reflective of the effort saved by avoiding trial and inherent risks of trial.  Moreover, the consent decree does not resolve any of the claims against Mr. Bunn which are still outstanding.

### III.    The Clean Water Act

The final step requires the Court to determine whether the consent decree is consistent with the purpose of the Clean Water Act, "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters."  33 U.S.C. § 1251(a).  The Clean Water Act's civil penalty provision is designed to provide specific and general deterrence.  *Ecological Rights Foundation v. Pacific Lumber Co.*, 230 F.3d 1141, 1153 (9th Cir. 2000).

Here, imposing a civil penalty is consistent with the deterrent aims of the Clean Water Act.  Accordingly,

IT IS ORDERED that the Motion (Doc. 20) is GRANTED.  The Court Court will enter the consent decree by separate order.

DATED this 19th day of November, 2020.

/s/ Dana L. Christensen

Dana L. Christensen, District Judge
United States District Court