IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>PAUL BUNN and SNYDER LOGGING AND LANDSCAPING, LLC,<br><br>Defendants. | CV 20–107–M–DLC–KLD<br><br><br>ORDER |

Before the Court is the United States' Unopposed Motion to Enter Partial Consent Decree. (Doc. 30.) The United States requests that this Court "enter the proposed Partial Consent Decree as an order on the docket of the Court." (*Id.* at 2.) Having reviewed the materials filed by the parties, the Court finds that the proposed consent decree is procedurally and substantively fair, reasonable, and consistent with the Clean Water Act's objectives. (Docs. 30, 30-1.) Accordingly, the Court will grant the motion and enter the parties' proposed consent decree.

## BACKGROUND

The United States commenced this action under 33 U.S.C. § 1319(b) and (d) of the Clean Water Act alleging that Paul Bunn and Snyder Logging and Landscaping, LLC ("Snyder Logging") discharged pollutants into the waters of the

1

United States without authorization.  (Doc. 1 at 2.)  The Complaint alleged that Mr. Bunn and/or Snyder Logging operated and controlled earthmoving work on Mr. Bunn's property that resulted in the discharge of pollutants into wetlands.  (*Id.* at 3.)  The Complaint alleged that neither Mr. Bunn nor Snyder Logging obtained any permits required under the Clean Water Act to perform this work.  (*Id.* at 6.)  Mr. Bunn is alleged to have discharged dredged or fill material from his property into wetlands that directly abutted the Yaak River and/or streams or channels that flow at least intermittently directly or indirectly into the Yaak River.  (*Id.* at 5–7.)  The United States contends that these wetlands were "waters of the United States" within the meaning of the Clean Water Act.  (*Id.* at 8.)

The United States' claims against Snyder Logging were resolved by partial consent decree, which this Court approved on November 19, 2020.  (Docs. 22–23.)  After Snyder Logging paid the civil penalty required by that consent decree, the Court entered an order dismissing Snyder Logging from the case with prejudice.  (Doc. 26.)

The United States lodged a proposed partial consent decree with Mr. Bunn on June 29, 2021.  (Doc. 27.)

## DISCUSSION

The United States moves the Court for entry of a partial consent decree.  (Doc. 30.)  Consistent with 28 C.F.R. § 50.7, the United States posted the partial

consent decree for public comment from July 6, 2021 through August 6, 2021. (*Id.* at 1–2.) The United States received no public comments. (*Id.* at 2.) Mr. Bunn does not oppose entry of the partial consent decree. (*Id.*)

A consent decree is "not a decision on the merits or the achievement of the optimal outcome for all parties, but is the product of negotiation and compromise." *United States v. Oregon*, 913 F.2d 576, 580 (9th Cir. 1990). Consent decrees "encourage[] informal resolution of disputes, thereby lessening the risks and costs of litigation." *S.E.C. v. Randolph*, 736 F.2d 525, 528 (9th Cir. 1984). The decision to enter a proposed consent decree falls within the district court's discretion. *Oregon*, 913 F.2d at 580. A court evaluates the proposal to ensure its terms are "fundamentally fair, adequate and reasonable," *id.*, considering both procedural and substantive fairness, *United States v. Chevron U.S.A., Inc.*, 380 F. Supp. 2d 1104, 1111 (N.D. Cal. 2005). Additionally, the consent decree "must conform to applicable laws" although it "need not impose all the obligations authorized by law." *Oregon*, 913 F.2d at 580–81. A court's review of the terms should be informed by the public policy favoring settlement, giving deference "where the decree has been negotiated by the Department of Justice on behalf of an agency[.]" *Chevron*, 380 F. Supp. 2d at 1111. On the other hand, a court must independently evaluate the decree to avoid giving it "rubber stamp approval." *United States v. Montrose Chem. Corp. of Cal.*, 50 F.3d 741, 747 (9th Cir. 1995) (quoting *City of*

*Detroit v. Grinnell Corp.,* 495 F.2d 448, 462 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000)). For the following reasons, the Court finds that the proposed consent decree is both procedurally and substantively fair, reasonable, and consistent with the purpose of the Clean Water Act.

## I. Procedural Fairness

The first step is to determine whether the proposed consent decree is procedurally fair. Courts evaluating procedural fairness look to determine whether the negotiation process was "full of adversarial vigor." *United States v. Pac. Gas & Elec.*, 776 F. Supp. 2d 1007, 1025 (N.D. Cal. 2011) (quoting *United States v. Telluride Co.*, 849 F. Supp. 1400, 1402 (D. Colo. 1994)). A decree that is the product of "good faith, arms-length negotiations" is "presumptively valid[,]" *Oregon*, 913 F.2d at 581, so long as no collusion has taken place, *Pac. Gas & Elec.*, 776 F. Supp. 2d at 1025 (citing *United States v. Colorado*, 937 F.2d 505, 509 (10th Cir. 1991)).

Here, the proposed consent decree is the result of "years of vigorous, adversarial negotiations." (Doc. 30 at 8.) The parties had the opportunity to evaluate the strengths and weaknesses of each other's positions through assessment of the property site and negotiations among the parties' expert consultants. (*Id.*)

4

Both parties were advised by counsel. (*Id.*) There is no evidence of collusion. Thus, the Court finds that the decree is procedurally fair.

## II.     Substantive Fairness and Reasonableness

The second step requires the Court to assess whether the terms are substantively fair. The question is not whether "the settlement is one which the court itself might have fashioned, or considers ideal." *Pac. Gas & Elec.*, 776 F. Supp. 2d at 1025 (citing *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 84 (1st Cir. 1990)). Instead, the "court's approval is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Oregon*, 913 F.2d at 581 (internal quotation omitted). "The court need only be satisfied that the decree represents a reasonable factual and legal determination." *Id.* (internal quotation omitted).

The proposed partial consent decree requires Mr. Bunn to (1) pay a civil penalty of $50,000 to the United States; and (2) perform a restoration project under the terms and conditions of Appendix 2 to the consent decree. (Doc. 30-1 at 7–10.) The restoration plan negotiated by the parties is expected to "restor[e] the floodplain ecosystem back to a state resembling the more recent pre-disturbance conditions with features consistent with other floodplain habitats in the area" and may "represent an enhancement over pre-disturbance conditions." (*Id.* at 40.) The restoration project is estimated to cost more than $120,000. (*Id.* at 56.)

5

The Court finds that the civil penalty is fair and reasonable as a specific and general deterrent.  The restoration plan is fair and reasonable because it requires Mr. Bunn to restore the impacted wetlands to their condition prior to his alleged violations, the EPA has determined that the restoration plan is technically adequate to restore the environment allegedly damaged by Mr. Bunn's activities, and Mr. Bunn rather than the public will bear the costs and burdens of the restoration work. (Doc. 30 at 8–9.)  The Court further finds that the consent decree as a whole is fair and reasonable because it reflects the strengths of the parties' negotiating positions, including the United States' litigation risk regarding the scope of injunctive relief and assessment of a greater civil penalty and Mr. Bunn's factual and legal defenses and the uncertainties and costs of litigation.

The Court notes, however, that the Parties did not adhere to the schedule of restoration project activities set forth in the restoration report.  (Doc. 30-1 at 59.) The report provided that administrative activities, including lodging the final consent decree, issuing public notice, and receiving Court approval, would take place between early March and early June 2021.  (*Id.*)  But the United States did not lodge the proposed partial consent decree until June 29, 2021 (Doc. 27); it did not provide public notice of the proposed consent decree until July 6, 2021 (Doc. 30 at 1–2), and it did not seek the Court's approval of the consent decree until August 9, 2021 (Doc. 30).  The parties further represented to the Court that the

6

earthwork required by the partial consent decree is not permitted under the Clean Water Act until the consent decree is entered by the Court. (Doc. 31 at 2.) To the extent the parties' delay relative to the proposed schedule requires adjustment of the time-related terms and conditions of the restoration plan, the Court encourages the parties to negotiate such adjustments in accordance with Section VII of the consent decree without seeking Court intervention, but the Court will entertain any necessary motions by Mr. Bunn. (*See* Doc. 30-1 at 12–13.)

### III. The Clean Water Act

The final step requires the Court to determine whether the consent decree is consistent with the purpose of the Clean Water Act, "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. §1251(a). The Clean Water Act's civil penalty provision is designed to provide specific and general deterrence. *Ecological Rights Found. v. Pacific Lumber Co.*, 230 F.3d 1141, 1153 (9th Cir. 2000).

Here, imposing a civil penalty is consistent with the deterrent aims of the Clean Water Act. Furthermore, requiring Mr. Bunn to complete, at his expense, restoration work intended and expected to restore the wetlands impacted by his alleged conduct to their previous state and improve overall water quality in the Yaak River watershed is consistent with the overall purpose of the Clean Water Act to maintain the integrity of the Nation's waters. 33 U.S.C. § 1251(a).

Accordingly, IT IS ORDERED that the Motion (Doc. 30) is GRANTED. The Court will enter the consent decree by separate order.

IT IS FURTHER ORDERED that the Joint Motion for Status Conference (Doc. 31) is DENIED as moot.

DATED this 31st day of August, 2021.

/s/ Dana L. Christensen
Dana L. Christensen, District Judge
United States District Court